UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| | | | |
|---|---|---|---|
| UNITED STATES OF AMERICA, | ) | | |
| | ) | | |
| Plaintiff, | ) | | |
| | ) | | |
| v. | ) | No.: | 3:19-CR-021-TAV-HBG-2 |
| | ) | | |
| WILLIAM E. ECHOLS, | ) | | |
| | ) | | |
| Defendant. | ) | | |

## MEMORANDUM OPINION AND ORDER

This criminal case is before the Court on defendant's renewed motion for a judgment of acquittal and for a new trial [Doc. 53], which the government opposes [Doc. 55]. After considering the record and controlling law, for the reasons that follow, the Court will **DENY** defendant's motion.

### I.      Background

On October 29, 2018, a five-prisoner crew from the Jefferson County Detention Center, which included defendant and codefendant Bill Baker, was sent out to pick up litter on the side of a highway. At some point during the day, while walking along the highway, one of the other prisoners happened upon a box full of what appeared to be methamphetamine. Each of the five prisoners sampled the contents of the box and concluded that it was indeed methamphetamine. According to the testimony of Mr. Baker, a portion of the methamphetamine discovered, approximately 300 grams, was then brought onto the transport bus by one of the prisoners, Shane Ritchie; another prisoner hid the remaining kilograms of methamphetamine in a wooded area alongside the highway.

Once on the bus, which was driven by Corrections Officer Rodney Stinson, the prisoners retrieved empty sandwich bags from their packed lunches and supplied Mr. Ritchie, who was seated in the back-right corner of the bus, with the bags.  Defendant was seated in the other back corner of the bus to Mr. Ritchie's left, and Mr. Baker was seated directly in front of defendant.  The other two prisoners were seated in the two rows in front of Mr. Ritchie.  Approximately 140 grams of methamphetamine were then divided among the bags; the remainder was ultimately left on the bus or hidden at the dumpsite where the prisoners unload the litter collected.

Each prisoner then received a bag containing approximately one ounce of methamphetamine.  Mr. Baker testified that he saw bags of methamphetamine passed from Mr. Ritchie down the line to the two prisoners seated in the rows before Mr. Ritchie.  He also testified that a bag fell into his lap from over his left shoulder.  He attested that, based on his observations and the prisoners' seating arrangement on the bus, defendant was the only person who could have dropped this bag into his lap—although Mr. Baker admitted on cross examination that he had previously told investigators that he did not know who had dropped the bag of methamphetamine in his lap.

Some of the prisoners then concealed or attempted to conceal bags of methamphetamine in their anal cavities.  According to the testimony of FBI Task Force Officer Robert Thornton, when he interviewed defendant on October 30, 2018, defendant admitted to law enforcement that he attempted to so conceal a bag of methamphetamine

2

but was unsuccessful. As a result, Officer Thornton testified, defendant gave his share of the methamphetamine to the other prisoners to pour in their bags.

Toward the end of the workday, at the dumpsite, defendant and Mr. Baker were each approached with offers to carry more methamphetamine into the jail, Mr. Baker testified. Both apparently declined. Specifically, according to Mr. Baker, Mr. Ritchie offered him more methamphetamine, but Mr. Baker declined because he understood Mr. Ritchie to be trying to persuade another prisoner to transport a second bag, Mr. Ritchie's bag, into the jail, when everyone had already been given a bag to transport. Mr. Baker testified that he offered more methamphetamine to defendant, but he too declined for, Mr. Baker assumed, similar reasons.

Ultimately, some of the methamphetamine was introduced into the jail, a result consistent with the prisoners' apparent plan from the beginning. Specifically, Officer Thornton testified that during his interview of defendant, defendant admitted that he saw all four of the other prisoners on the litter crew with their bags of methamphetamine inside the jail and that the prisoners' plan was to bring the methamphetamine inside the jail. Similarly, Mr. Baker testified that their plan was to bring the methamphetamine inside the jail and, using it as a form of currency, distribute it therein—although Officer Thornton acknowledged that defendant did not specifically indicate that the plan included distributing the methamphetamine to other prisoners. Nevertheless, the methamphetamine discovered by the litter crew was in fact distributed once inside the jail. Mr. Baker testified that Mr. Ritchie gave methamphetamine to "everybody," and Officer Thornton testified

3

that multiple inmates tested positive for methamphetamine the following day. Mr. Baker did agree that he did not see defendant bring any methamphetamine into the facility. But, according to the testimony of witnesses, defendant appeared to be intoxicated the following morning, which, according to Mr. Baker, indicated defendant had ingested methamphetamine while in the jail.

The next morning, Officer Stinson discovered—apparently under defendant's seat—the methamphetamine that was left on the bus, and authorities began investigating. As a result of the investigation, on February 20, 2019, defendant and codefendant Bill Baker were indicted on two charges: (1) conspiracy to possess fifty (50) grams or more of methamphetamine with intent to distribute, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A), and (2) possession of fifty (50) grams or more of methamphetamine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(A).

Both defendants executed plea agreements in September 2019 [Docs. 25, 28]. On September 26, 2019, both defendants appeared before the Court for their respective change-of-plea hearings. Mr. Baker pled guilty to the conspiracy charge [Doc. 30]. Defendant, on the other hand, stated that he did not agree with the factual basis for the charge set forth in his plea agreement, and the hearing was continued as a result [Doc. 31]. The day the hearing was set to resume, defendant filed a motion to continue the trial date, extend the deadlines set forth in the scheduling order, and withdraw the plea agreement [Doc. 34]. The Court granted the motion [Doc. 35], and the case against defendant proceeded to trial on March 3, 2020.

4

After a two-day trial, a jury found defendant guilty of both charges, although the jury found that defendant possessed with the intent to distribute only five (5) grams or more but less than fifty (50) grams of methamphetamine [Docs. 46, 49, 50], as opposed to the fifty (50) grams or more that was charged in the Indictment [Doc. 1]. The Court denied defendant's motion for judgment of acquittal [Docs. 46, 49]. Defendant now renews his motion for judgment of acquittal and alternatively moves for a new trial [Doc. 53]. The government has responded in opposition [Doc. 55]. Defendant did not reply, and the time for doing so has passed. *See* E.D.TN. LR 7.1(a). The motion is now ripe for resolution.

## II. Legal Standards

A motion for judgment of acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure challenges the sufficiency of the evidence to support the conviction. *See* Fed. R. Crim. P. 29(c); *United States v. Montgomery*, 358 F. App'x 622, 628 (6th Cir. 2009). When reviewing such a motion, the Court must decide "whether, after viewing the evidence in a light most favorable to the government, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Gardner*, 488 F.3d 700, 710 (6th Cir. 2007) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). In doing so, the Court must not weigh evidence, assess witness credibility, or "substitute its judgment for that of the jury." *United States v. Chavis*, 296 F.3d 450, 455 (6th Cir. 2002). This standard places a "very heavy burden" on defendants. *Id.*

Alternatively, the Court "may vacate any judgment and grant a new trial" under Rule 33 "if the interest of justice so requires." Fed. R. Crim. P. 33(a). A Rule 33(a) motion

"may be premised upon the argument that the jury's verdict was against the manifest weight of the evidence," *United States v. Hughes*, 505 F.3d 578, 593 (6th Cir. 2007), but such motions should be granted only "in the extraordinary circumstances where the evidence preponderates heavily against the verdict." *Id.* (quoting *United States v. Turner*, 490 F. Supp. 583, 593 (E.D. Mich. 1979)). In contrast to a Rule 29 motion, however, a district judge considering a Rule 33 motion "may act as a thirteenth juror, assessing the credibility of witnesses and the weight of the evidence." *Id.* (citing *United States v. Lutz*, 154 F.3d 581, 589 (6th Cir. 1998)). "The decision whether to grant a new trial is left to the sound discretion of the district court . . . ." *United States v. Wheaton*, 517 F.3d 350, 361 (6th Cir. 2008) (quoting *United States v. Pierce*, 62 F.3d 818, 823 (6th Cir. 1995)).

## III.    Analysis

Defendant claims that there was insufficient evidence upon which a reasonable jury could find him guilty of either the drug conspiracy or possession with intent to distribute [Doc. 53 p. 4–5]. Additionally, he argues that the verdict was against the weight of the evidence [*Id.*].

Defendant alleges a lack of evidence as to each element of a drug conspiracy [Doc. 53 p. 4–5]. *See Gardner*, 488 F.3d at 710 ("To sustain a conviction for drug conspiracy under section 846, the government must prove beyond a reasonable doubt: (1) an agreement to violate drug laws; (2) knowledge of and intent to join the conspiracy; and (3) participation in the conspiracy." (citing *United States v. Layne*, 192 F.3d 556, 567 (6th Cir.1999))). In support, he notes the following: (1) defendant refused methamphetamine

offered by Mr. Baker at the dumpsite; (2) Mr. Baker's testimony confirmed that defendant never transported methamphetamine into the jail; (3) Mr. Ritchie, not defendant, broke up the methamphetamine on the bus and distributed it to the prisoners, including defendant; (4) while he did accept methamphetamine from Mr. Ritchie while on the bus, defendant returned it to Mr. Ritchie before ever leaving his seat; and (5) although Mr. Baker testified at trial that while on the bus defendant placed the bag in his lap, he had originally told officers that he did not know who had given him the bag [*Id.* at 4]. Defendant argues that these facts "do not substantiate an intent to join a conspiracy," do not "evidence an agreement to violate the drug laws," and "belie [the government's argument] that Mr. Echols engaged in any sort of conspiratorial action" [*Id.* at 5].

A rational jury could find based on the evidence presented at trial that defendant willfully agreed to cooperate with the other prisoners to violate drug laws. At trial, Mr. Baker testified that each of the prisoners, including defendant, knowing Mr. Ritchie had brought methamphetamine onto the bus, supplied Mr. Ritchie with his sandwich bag. Based on this, and the prisoners' other discussions and interactions, Mr. Baker testified, it was clear that the plan was to bring the methamphetamine into the jail in the sandwich bags and distribute it. *See Gardner*, 488 F.3d at 710 (noting that with respect to conspiratorial agreement, "the government need not prove the existence of a formal or express agreement among the conspirators. Even a tacit or mutual understanding among the conspirators is sufficient." (citing *United States v. Avery*, 128 F.3d 966, 970–71 (6th Cir. 1997))); *see also* Sixth Cir. Pattern Jury Instruction No. 14.05.

7

Defendant's own admissions to investigators corroborate this testimony and support a finding that he was a willful participant in the conspiracy. According to Officer Thornton's testimony, defendant admitted to investigators that the prisoners' plan was to bring the methamphetamine into the jail and that he had attempted to conceal the methamphetamine inside his body. Thus, even accepting as true defendant's point that he refused methamphetamine offered to him at the dumpsite, this does not undermine the jury's verdict. Viewing the evidence in the light most favorable to the government, defendant's refusing to accept methamphetamine at the dumpsite is not indicative of a lack of conspiratorial agreement or willful participation because, according to Officer Thornton's and Mr. Baker's testimony, defendant had previously accepted approximately one ounce of methamphetamine while on the bus.

Similarly, in light of the fact that, according to defendant's own admission, the reason he returned the methamphetamine to Mr. Ritchie while on the bus and did not bring it into the jail was because he was unsuccessful in his attempt to conceal it inside his body, defendant's returning his share of the methamphetamine to Mr. Ritchie while still on the bus—in addition to his apparently not bringing any methamphetamine into the jail himself—does not indicate withdrawal from the conspiracy or a lack of willful participation. Indeed, according to the testimony at trial, defendant returned the methamphetamine he was given so that it could be poured into the other prisoners' bags for transportation into the jail.

8

Nor does the fact that Mr. Ritchie, not defendant, divided the methamphetamine up into the sandwich bags indicate that defendant was not a willful participant in the conspiracy. Although Mr. Ritchie apparently bagged the methamphetamine, according to Mr. Baker's trial testimony, defendant was instrumental in the transfer of the methamphetamine from Mr. Ritchie to Mr. Baker while on the bus. And Mr. Baker's trial testimony on this point is corroborated by other witness testimony, including Officer Stinson's testimony related to where the prisoners were seated on the bus.

Defendant also alleges a lack of evidence of an intent to distribute. He argues that even if it was defendant who placed the bag of methamphetamine on Mr. Baker's lap, "this does not evidence an intent to distribute" [Doc. 53 p. 5]. Rather, he contends, "it merely shows that [he] did not want to possess meth or take it into the jail" [*Id.*; *see also id.* at 4 (noting that Baker's testimony "confirmed that Mr. Echols never transported meth into the Jefferson County jail")].

But viewing the evidence in the light most favorable to the government, the Court finds that there was sufficient evidence of an intent to distribute introduced at trial. As the Court has noted, Mr. Baker testified at trial that defendant, along with all the other prisoners, provided their sandwich bags to Mr. Ritchie pursuant to a mutual understanding that they were going to bring the methamphetamine into the jail and distribute it. Additionally, corroborating the testimony of the government's expert witness, Special Agent Tyler Gustafson, Mr. Baker also testified that the amount that was distributed to each of the prisoners on the litter crew was not a user amount. *See United States v. Lawson*,

9

476 F. App'x 644, 650 (6th Cir. 2012) ("To prove an intent to distribute, the prosecution can rely on 'the inferences drawn from . . . the quantity of the [controlled substance] involved, the estimated street value . . . and other evidence which would support the inference that the [controlled substance] was not intended to be used for personal use.'" (quoting *United States v. Vincent,* 20 F.3d 229, 233 (6th Cir.1994))).

Viewing this evidence in the light most favorable to the government, a rational jury could certainly find that defendant was not seeking to rid himself of the methamphetamine when he delivered it to Mr. Baker. Instead, he was giving him the methamphetamine in furtherance of the conspiracy's objective: introducing the methamphetamine into the jail and distributing it therein, which Mr. Baker admitted he ultimately was successful in doing. And drawing inferences from the apparent quantity of methamphetamine defendant admitted to attempting to conceal inside his body, a rational jury could find that the methamphetamine defendant possessed while on the bus was not intended for personal use.

For the reasons discussed, defendant is not entitled to the relief sought. Viewing the evidence in its totality, and in a light most favorable to the government, for purposes of defendant's Rule 29 motion, the Court finds that the government presented sufficient evidence of the essential elements of both conspiracy to possess methamphetamine with the intent to distribute and possession of methamphetamine with the intent to distribute. Accordingly, a rational jury could have found defendant guilty of each offense beyond a reasonable doubt, and as a result, defendant has not carried the "very heavy burden" placed on defendants moving for a judgment of acquittal. *Gardner*, 488 F.3d at 710. Nor has

10

defendant established that this case presents "the extraordinary circumstances where the evidence preponderates heavily against the verdict." *Hughes*, 505 F.3d at 593. Having evaluated the weight of the evidence presented by the government, for purposes of defendant's Rule 33 motion, the Court is not of the opinion "that the jury's verdict was against the manifest weight of the evidence." *Id.* Denying defendant's motion for a new trial therefore results in no harm to the interests of justice. *See* Fed. R. Crim. P. 33(a).

## IV.    Conclusion

For the reasons discussed, the Court finds that neither a judgment of acquittal nor a new trial is warranted. Defendant's motion for a judgment of acquittal and a new trial [Doc. 53] is accordingly **DENIED**.

IT IS SO ORDERED.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE

11